UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOHN BADALAMENTI,

                       Plaintiff,                    **MEMORANDUM & ORDER**
       -against-                                   CV 10-4993 (GRB)

COUNTRY IMPORTED CAR CORP. d/b/a
BMW OF THE HAMPTONS AND MINI OF
THE HAMPTONS, *et al.*

                       Defendants.
----------------------------------------------------------X

**APPEARANCES:**

| **For Plaintiff John Badalamenti:** | **For Defendant Michael Caruso individually**: |
|---|---|
| Frank & Associates P.C. | Lawler Mahon & Rooney, LLP |
| 500 Bi-county Blvd, 112n | 36 W. 44th Street |
| Farmingdale, NY 11735 | Suite 1416 |
| By: Neil Frank, Jansen Anderman-Hahn, Peter Arcadio Romero | New York, NY 10036 |
| | By: James J. Mahon, Stephen J. Fraher |

| **For Defendant Local 210 Unity Welfare Fund**: | **For Defendants Trustees of Local 210 Welfare Fund, and Michael Caruso as executor of the last will of Vincent Caruso**: |
|---|---|
| L'Abbate, Balkan, Colavita & Contini, LLP | L'Abbate, Balkan, Colavita & Contini, LLP |
| 1001 Franklin Avenue | 1001 Franklin Avenue |
| Garden City, NY 11530 | Garden City, NY 11530 |
| By: Aneta Sudol, Peter L. Contini | By: Aneta Sudol |

**GARY R. BROWN, United States Magistrate Judge:**

      Before the Court is a motion by plaintiff John Badalamenti for attorney's fees and costs against defendants Local 210 Unity Welfare Fund, Trustees of Local 210 Welfare Fund, Dominick Formisano as plan administrator of Unity Welfare Fund (collectively "Fund Defendants"), Michael Caruso, individually, and as executor of the last will of Vincent Caruso (collectively "Caruso Defendants"), and Country Imported Car Corp. ("Country Car"). During

1

the course of this litigation, plaintiff's counsel, as discussed *infra*, provided services that were, at times, objectively unreasonable and substandard. By way of example, plaintiff's counsel attempted to obtain default judgments against defendants (one of whom had died), without properly serving them or otherwise complying with the Federal Rules of Civil Procedure. At another point, based on inattention by plaintiff's counsel, the Honorable Sandra J. Feuerstein dismissed the action for failure to prosecute, which was later lifted in favor of a monetary sanction against plaintiff's counsel. Most troubling, however, has been counsel's submissions with respect to the instant application, in which plaintiff's counsel, without any proffered rationale or substantial additional work, increased the fees sought from $131,498.13 to $192,491.25, largely by arbitrarily and retroactively altering the hourly rates charged by its attorneys. As a result, plaintiff's motion for attorney's fees and costs is GRANTED, but only to the extent and in the amounts set forth herein.

## FACTUAL BACKGROUND

This matter arises under Employee Retirement Income Security Act ("ERISA") based upon the denial of health insurance claims by plaintiff emanating from the failure by plaintiff's employer—defendant Country Car and its officers and shareholders Vincent and Michael Caruso—to make contributions to the Local 210 Unity Fund ("Fund") pursuant to a collective bargaining agreement between Country Car and the relevant union, and the failure of the Fund to inform plaintiff that his health coverage was in jeopardy. *See generally* Pl.'s Br. 2-8, Docket Entry ("DE") 112-30. On January 2010, plaintiff underwent heart surgery. *Id.* On March 2010, the hospital informed plaintiff that his claim for benefits was being denied by the Fund. *Id.*

Plaintiff asserts various federal and state claims against defendants, including, *inter alia*,

2

claims under 29 U.S.C. § 1132(a)(1)(A) against the Fund Defendants for failing to notify plaintiff that his health insurance was in jeopardy, claims under § 1132(a)(2) against the Fund Defendants for breaching fiduciary duty by not commencing a lawsuit against Country Car and Caruso Defendants, and claims against Caruso Defendants for failure to make contributions in accordance with the terms and conditions of the plan under § 1145. *Id.* at 10-12.

## PROCEDURAL HISTORY

Plaintiff commenced this action by filing a complaint on October 29, 2010, and then filed an Amended Complaint on December 1, 2010. DE 3. Though counsel for plaintiff failed to serve Vincent Caruso with the Amended Complaint, counsel nonetheless sought entry of default against Vincent Caruso on February 8, 2011. DE 23. Counsel also neglected to request a Clerk's entry of default as to Michael Caruso. On July 19, 2011, plaintiff filed a motion for default judgment against Vincent and Michael Caruso, which motion was referred to the assigned magistrate judge for a Report and Recommendation. DE 28. Having determined that the motion lacked any indication of service of the Amended Complaint upon Vincent Caruso or a notation of default by the Clerk of the Court as to either of the Caruso defendants, the undersigned directed counsel to procure the same by February 1. E-Order dated Jan. 25, 2012. Instead, by letter dated February 1, 2012, plaintiff's counsel asked that default judgment be imposed against Vincent Caruso on the original complaint (though, by the time of this letter, Vincent Caruso has passed away), and indicated that it has already requested a Clerk's notation as part of its default judgment motion. DE 41. Judge Feuerstein vacated the order of referral as to the default motion on that date. DE 76 at 4.

In a written order dated February 22, 2012, Judge Feuerstein denied plaintiff's motions

3

for default judgment against Vincent and Michael Caruso. DE 44. The Court noted that as to Vincent Caruso, "the original complaint was superseded by the Amended Complaint before the expiration of the time within which Vincent Caruso had to answer the original complaint" such that the motion was meritless. *Id.* at 2. The Court also took judicial notice, *sua sponte,* that Vincent Caruso passed away on January 18, 2012 and plaintiff has failed to take the appropriate procedural steps, providing a further basis to deny entry of default judgment against Vincent Caruso. *Id.* at 2 (citing *Bernhard v. County Ford Ltd.*, No. 10-cv-4128 (ADS)(GRB)). The Court denied plaintiff's motion for default judgment as to Michael Caruso because plaintiff failed to append a Clerk's entry of default as to that defendant, which must be entered "prior to application for a default judgment." DE 44 at 3-4.

On February 23, 2012, Judge Feuerstein scheduled a status conference for March 26, 2012. On March 26, 2012, plaintiff's counsel failed to appear at the conference; defendants made a joint motion to dismiss for failure to prosecute; and Judge Feuerstein granted the motion on the record. DE 46. On March 30, 2012 plaintiff made a motion to set aside the judgment under Federal Rule of Civil Procedure ("Rule") 60(b). DE 49. Judge Feuerstein granted the motion to set aside the dismissal, but imposed a monetary sanction against plaintiff's counsel to offset the attorney's fees and costs incurred by defendants in connection with the March 26, 2012 status conference. DE 54.

On May 11, 2012—well more than a year after the Amended Complaint was filed—plaintiff made a motion for extension of time to serve the summons and Amended Complaint upon Michael Caruso, and to substitute Michael Caruso as executor of the last will of Vincent Caruso. DE 60. Judge Feuerstein granted the substitution of Michael Caruso as executor of the last will of Vincent Caruso. DE 76.

4

Regarding the request for extension of time, however, the Court stated "[c]ontrary to plaintiff's contention, he has not established good cause for the failure to properly effect service of a summons and amended complaint upon M. Caruso." *Id.* at 10. The Court stated "the only obstacles [plaintiff] identifies are steps he took to prosecute this action on or after March 30, 2012, to wit his motion to set aside the judgment dismissing this action based upon his failure to appear at the March 26, 2012 pretrial conference." *Id.* The Court, nevertheless, granted plaintiff's motion. *Id.* Caruso Defendants were served on December 13, 2012. DE 77. Caruso Defendants answered on January 15, 2013. DE 84. Upon the parties' consent, the case was reassigned to the undersigned for all purposes on January 31, 2013. DE 87.

The undersigned held settlement conferences on August 9, 2013 and February 26, 2014. DE 95, 109. On March 6, 2014, plaintiff filed a joint letter advising the Court that the parties had reached a settlement regarding all claims. DE 110. Defendants paid a total settlement of $29,839.80 to plaintiff's medical service providers, consisting of $26.860.32 by Fund Defendants, and $2,979.48 by Caruso Defendants. Contini Decl. ¶ 2, DE 113. This motion followed.

**The Motion for Attorneys' Fees and Costs**

Plaintiff submitted the instant motion for attorney's fees and costs on May 18, 2014, which was fully briefed on July 1, 2014. DEs 112-117. Upon filing the motion, plaintiff sought $131,498.13 in attorney's fees. Pl.'s Br. 20, DE 112-30. In support of the motion, plaintiff submitted a declaration by Peter A. Romero, Esq., where Mr. Romero attested, under penalty of perjury,[1] to the accuracy of the contemporaneous time records submitted therewith. DE 112-1

---

[1] Section 1746 of Title 28, United States Code provides that "[w]herever . . . any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or

5

(citing Ex. Z). The declaration further states "As documented in counsel's timesheets, Frank & Associates, P.C. has spent a total of 547.95 hours on this case. Counsel has reduced the total number of hours by 71.15 as indicated by the notation "Do Not Bill," to account for any alleged inefficiency or redundancy," resulting in a net total hours of 476.8 hours billed. *Id.* In a separate declaration, Mr. Romero similarly averred that "Exhibit Z are the time records showing the hours spent and costs incurred by Plaintiff's counsel in this litigation." DE 112-2.

The contemporaneous time records show the following hourly rates sought for each attorney:

| Name | Title | Original Hourly Rate |
| --- | --- | --- |
| Neil M. Frank | Partner | $400 |
| Peter A. Romero | Partner | $375 |
| Edward Sample | Associate | $275 |
| Greg Nahas | Associate | $250 |
| Jose Santiago | Associate | $250 |
| Jeffrey Silverstein | Associate | $225 |
| Stephanos Zannikos | Associate | $200 |
| David Barnhorn | Associate | $200 |
| Danielle Sacari | Associate | N/A, newly added |
| Jansen Hahn | Associate | N/A, newly added |

*See* DE 112 at Ex. Z. The contemporaneous time records supplied contained insufficient

---

affidavit, in writing of the person making the same . . .such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury."

summary information—for example, had the Court decided on a different hourly rate for a particular billing attorney, it would have been difficult if not impossible to determine the effect on the overall fees sought. Thus, on March 17, 2015, the Court issued the following order:

> [T]o assist the Court in its review, plaintiffs' counsel is hereby directed to provide a summary of the billing records annexed to [DE] 112 motion for attorney's fees. In particular, counsel shall provide a list of the individual attorneys and paraprofessionals for whom compensation is being sought, the total number of hours sought for that individual's work, and the individual's hourly rate. Said summary should be provided by March 27, 2015. Plaintiffs are further directed to provide courtesy copies of said summary, [DE] 112 motion for attorney's fees, and all opposition papers by March 27, 2015.

Order dated Mar. 17, 2015. On March 25, 2015, Mr. Romero submitted a supplemental sworn declaration setting forth the "attorneys and paraprofessionals for whom compensation is being sought, the total number of hours sought for each individual's work, and the applicable hourly rates." Romero Supp. Decl. ¶ 3, DE 120. Those hourly rates differed inexplicably and dramatically from the rates sought in the original application, as demonstrated below:

| Name | Title | Original Hourly Rate | "New" Hourly Rate | Percentage Increase |
|---|---|---|---|---|
| Neil M. Frank | Partner | $400 | $550 | 37.5% |
| Peter A. Romero | Partner | $375 | $450 | 33% |
| Edward Sample | Associate | $275 | $300 | 1% |
| Greg Nahas | Associate | $250 | $300 | 20% |
| Jose Santiago | Associate | $250 | $300 | 20% |
| Jeffrey Silverstein | Associate | $225 | $300 | 33% |
| Stephanos Zannikos | Associate | $200 | $275 | 37.5% |
| David Barnhorn | Associate | $200 | $200 | -- |
| Danielle Sacari | Associate | N/A, newly added | $275 | -- |

7

| Jansen Hahn | Associate | N/A, newly added | $275 | -- |

DE 120. In addition to this unexplained—and unjustifiable—rate increase, Mr. Romero added 98.15 hours of attorney time in his supplemental declaration during a period when virtually no attorney work should have been performed, and added two additional associates to the bill. *Id.* As a result of the inexplicable increased rates and hours, the amount of fees (without costs) requested soared to $192,491.25, *an increase of 46% over the $131,498.13* originally sought.[2]

Not only are the total hours purportedly expended and hourly rates problematic, but an examination of the tasks charged reveal issues of concern. For example, despite counsel's failure to following proper procedures in securing a default judgment against Caruso Defendants, plaintiff seeks to recover attorney's fees associated with researching and drafting the default judgment motion. *See, e.g.*, *id.* (entries dated 1/10/2011, 1/24/2011-7/18/2011). That default judgment motion—among the most formulaic of procedures—apparently took *six months* to complete. *Id.* Furthermore, although Judge Feuerstein dismissed the case as a sanction for counsel's inattention to the case (later substituting the lesser sanction of costs), the firm seeks to blunt the effect of that sanction by charging the cost of researching and drafting plaintiff's Rule 60(b) motion back to defendants. *See id.* (entries dated 3/28/2012-3/30/2012).

Defendants document numerous problems with the fee application. *See generally* Contini Decl. ¶¶ 2-9. Most importantly, defendants persuasively argue that the Frank firm, among other things, unnecessarily prolonged the litigation, thus artificially inflating the potential fee award. *Id* at 9-11. This claim need not be examined in detail, as the record plainly shows that the

---

[2] In an effort to understand how inconsistent time records could arise, the Court checked the supplemental declaration in *Flores v. Mamma Lombardi's of Holbrook, Inc*., No. 12-CV-3532, DE 160, where the Court also directed plaintiff's counsel to submit a similar summary, and found alas that the hourly rates and time spent were different in that case.

8

settlement ultimately reached in February 2014 differed little—if at all—from the agreement outlined with the Court at the August 2013 settlement conference with the undersigned. *See* DE 106 at 11-12. Indeed, even at that time, the sole impediment to settlement appears to have been plaintiff counsel's concerns about fees, not about the substance of the settlement itself. *Id.* Ultimately, defendants take the position that "plaintiff's attorneys should be denied any fees in this case." *Id.* at 11.

**DISCUSSION**

1. **Plaintiff's Entitlement to Attorney's Fees and Costs**

All parties agree that 29 U.S.C. § 1132(g)(1) applies.[3] Under § 1132(a)(1)(A), "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1) (2014). "It is well-established that 'Congress intended the fee provisions of ERISA to encourage beneficiaries to enforce their statutory rights.'" *Donachie v. Liberty Life Assur. Co. of Boston*, 745 F.3d 41, 45-46 (2d Cir. 2014) (citations omitted). After the Supreme Court's decision in *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010), "whether a plaintiff has obtained some degree of success on the merits is the sole factor that a court *must* consider in exercising its discretion." *Donachie*, 745 F.3d at 46 (citing *Hardt*, 560 U.S. at 255). While courts may accordingly award attorney's fees "without further inquiry, . . . to a plaintiff who has had 'some degree of success on the merits,'" *Hardt* also made clear that courts retain discretion to consider the *Chambless* factors. *Id.*[4] However, the Second Circuit has warned that

---

[3] Because plaintiff asserts a claim under § 1145 against Caruso, plaintiff's motion as to Caruso arguably falls under § 1132(g)(2), which provides "In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan . . . **(D)** reasonable attorney's fees and costs of the action, to be paid by the defendant, . . . ." § 1132(g)(2). However, since the parties do not raise the issue, the Court does not address it.
[4] The *Chambless* factors are "(1) the degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties

9

"if a court chooses to consider factors other than a plaintiff's 'success on the merits' in assessing a request for attorney's fees, *Chambless* still provides the relevant framework in this Circuit, and courts must deploy that useful framework in a manner consistent with our case law. A court cannot selectively consider some factors while ignoring others." *Id.* at 46-47.

Here, all parties agree that at this juncture plaintiff has achieved some success on the merits, and the Court declines to consider the *Chambless* factors. *Accord Barbu v. Life Ins. Co. of North America*, No. 12-CV-1629 JFB SIL, 2015 WL 778325, at *2 (E.D.N.Y. Feb. 24, 2015). Thus, an award is appropriate. The amount of that award is more problematic, because, I find, unequivocally, that plaintiff's counsel has failed to satisfy its "burden . . .to justify the hourly rates sought." *Hensley v. Eckerhart*, 461 U.S. at 437. Moreover, the court must "exclude excessive, redundant or otherwise unnecessary hours," *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999), and "apply across-the-board reductions for vague entries." *Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Engineers Local 14-14B, AFL-CIO v. Integrated Structures Corp.*, 2013 WL 4095651, at *12 (E.D.N.Y. Aug. 13, 2013). I find that the vast majority of the work submitted by plaintiff's counsel represent excessive and unnecessary hours, and are supported by principally vague entries.

### 2. Reasonableness of Attorney's Fees and Costs

Defendants argue that plaintiff's motion should be denied in its entirety based upon the unreasonableness of plaintiff's application and the conduct of plaintiff's counsel during litigation. Contini Decl. 1, DE 113; Mahon Aff. 1, DE 115 (adopting all arguments made by

---

would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions." *Donachie*, 745 F.3d at 46.

Fund Defendants). Plaintiff submitted a reply brief responding to some of defendants' arguments. Pl.'s Reply Br. 1-11, DE 117.

"Generally, to determine a reasonable attorney's fee, a court must calculate a 'lodestar figure,' which is determined by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate." *Barbu*, 2015 WL 778325, at *2. "Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). The Second Circuit has held "[w]hile the lodestar is not always conclusive, its presumptive reasonability means that, absent extraordinary circumstances, failing to calculate it as a starting point is legal error." *Id.* The Second Circuit has also held that any attorney applying for court-ordered compensation "must document the application with contemporaneous time records," which "should specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

For the reasons set forth herein, extraordinary circumstances in the present fee application render the lodestar method unreliable for calculating plaintiff's attorney's fees. Indeed, based on the unreliable and contradictory information submitted by plaintiff's counsel on this application, which includes fees for matters that are clearly not compensable and fluctuating rates and hours, it is impossible to calculate a lodestar in these circumstances.

### A. Conflicting Declarations Submitted Under Penalty of Perjury

As an initial matter, plaintiff has submitted wildly conflicting sworn declarations. Initially seeking $131,498.13 in his motion, plaintiff submitted contemporaneous time records reflecting the tasks completed, date, hours worked, and an itemization of costs. DE 112 at Ex. Z.

11

Some time later—after the matter had been settled and no additional work needed to be done -- the undersigned requested a "summary" of the purported time and cost expenditures, not a revision or supplementation of those costs and fees. See E-Order dated Mar. 17, 2015. Yet counsel took that opportunity—without explanation or request—to inexplicably add two associates on this matter, radically increase the time charged on this case by approximately 100 hours and retroactively raise the hourly rates charged by as much as 37.5%. The resulting attorney's fees of $192,491.25 represented a nearly 50% increase in the amount sought.

As a result of these unjustifiable changes, along with the other improprieties noted herein and in defendants' submission, I find that counsel's sworn statements are inherently incredible. Hence, it is not feasible to calculate a reliable lodestar in these disquieting circumstances.

### B. *Unreliability in Plaintiff's Original Contemporaneous Time Records*

In any event, plaintiff's original contemporaneous time records raise red flags as to the reliability of plaintiff's submission. First, this relatively straightforward, single-plaintiff case was extremely limited in scope. Indeed, the undersigned was able to work through the outlines of a settlement with counsel in one settlement conference. Yet counsel took five years to litigate this case before the eventual resolution.

Second, plaintiff's counsel attempts to charge attorney's fees and costs for counsel's own failures in litigation. As discussed above, the failed attempts to obtain a default judgment—a procedure not comparable to rocket science—represents substandard legal work by plaintiff's counsel. Notwithstanding this failure, counsel seeks to recover attorney's fees associated with researching and drafting the default judgment motion which, unimaginably, took six months to complete. *See, e.g.*, *id.* (entries dated 1/10/2011, 1/24/2011-7/18/2011).

Third, counsel's attempt to charge back the costs of vacating the dismissal of this

12

action—attributable only to counsel's mismanagement of the case—borders on the unconscionable. *See* DE 112 at Ex. Z (entries dated 3/28/2012-3/30/2012). The Second Circuit has held that "[t]he underlying purpose of sanctions [is to] punish deviations from proper standards of conduct with a view toward encouraging future compliance and deterring further violations. . . . " *See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 179 (2d Cir. 2012) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1281 (2d Cir. 1986)). Given the Circuit's directive, it far exceeds the bounds of reasonability to allow plaintiff's counsel to defeat this policy by collecting fees for work engendered by its own failures.

Finally, defendants' opposition papers identify further indicia of unreliability in the original contemporaneous time records: vagueness of plaintiff's entries, excessive fees related to legal research given plaintiff's advocacy, inflated deposition times, and unnecessarily prolonging of the lawsuit. Contini Decl.; Mahon Aff. Plaintiff's reply brief argues that the billing records are not overly vague,[5] the Court should not apportion fees among defendants, and rates requested are within the range of rates awarded in this district. Pl.'s Reply Br. 1-11. However, plaintiff counsel's responses are without merit.

In sum, plaintiff's inconsistent time records, and the unreliability of plaintiff's original contemporaneous time records, are insufficient for the Court to accurately award fees under lodestar method. These factors further support the conclusion that the lodestar method cannot be employed here.

---

[5] Plaintiff argues that their submission is not overly vague when considered "in the context of the entire billing summary . . . ." Pl.'s Reply Br. 5. However, no matter how one tries to dress them up, entries such as "[r]eview demands," "[r]esearch," and "[r]eview motion" become muddier, not clearer given the context of the entire billing summary. *See Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998) (holding no abuse of discretion when district court reduced attorney's fees and costs when "time entries merely note, 'letter to court,' 'staff conference,' or 'work on motion'").

### 3. Calculating the Proper Attorney's Fee Award

Nevertheless, despite the unreliability of plaintiff's submissions, some attorney's fees should be awarded in this case. As plaintiff correctly points out, Congress has created a strong policy for ERISA beneficiaries to enforce their statutory rights. *Donachie*, 745 F.3d at 45-46 ("It is well-established that 'Congress intended the fee provisions of ERISA to encourage beneficiaries to enforce their statutory rights.'"); *Morin v. Nu-Way Plastering Inc.,* No. CV 03-405 (LDW)(ARL), 2005 WL 3470371, at *2 (E.D.N.Y. Dec. 19, 2005) ("the purpose of [ERISA]'s fee and cost shifting mandate is deterrence"). In absence of a lodestar calculation, and any reliable estimate of reasonable and compensable fees, a different methodology is needed. In the context of class actions, the Second Circuit has determined that "either the lodestar or percentage of the recovery methods may properly be used to calculate fees in common fund cases . . . ." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 45 (2d Cir. 2000). This contingency fee approach requires that "[t]he court sets some percentage of the recovery as a fee." *Id.* at 47.

The percentage of recovery approach should be applied here. In reaching this decision, the Court is mindful that it is ordinarily inappropriate for "an award of attorneys' fee be proportional to the damages recovered" under ERISA. *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 160 (2d Cir. 1992); *see also Koam Produce, Inc. v. DiMare Homestead, Inc.*, 329 F.3d 123, 131 (2d Cir. 2003). However, given the circumstances, including the unacceptable submissions by plaintiff's counsel, a contingency fee presents the best way to compensate plaintiff's counsel given ERISA's policy in favor of fee and cost shifting.

Here, the total settlement by Fund Defendants and Caruso Defendants amounted to $29,839.80. Contini Decl. ¶ 2. In calculating the appropriate attorney's fee, courts should

determine "what a reasonable client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008). As the undersigned noted in another matter:

> [C]ontingency fees generally do not exceed one-third. *See Dullard v. Berkeley Assocs. Co.,* 606 F.2d 890, 896 (2d Cir.1979) ("in a wrongful death suit contingent fees of as much as one-third of the net recovery ... are presumptively permissible"); *King v. Fox,* No. 97–Civ–4134, 2004 WL 68397 (S.D.N.Y. Jan.14, 2004) ("[a] one-third contingency fee is standard throughout the state and country"), *remanded on other grounds,* 458 F.3d 39 (2d Cir.2006). In certain circumstances, legislatures have addressed the issue, imposing caps on contingency fees lower than 33 percent. *See, e.g.,* N.Y. Judiciary Law § 474–a (limiting contingency fees in medical malpractice cases to ten to thirty percent, depending on size of recovery); 28 U.S.C. § 2678 (imposing 25% maximum cap in Federal Tort Claims Act cases). Though there is no contingency fee cap in civil rights cases, the Supreme Court has held that in awarding fees under 42 U.S.C. § 1988, "[t]he legislative history [of section 1988] explains that 'a reasonable attorney's fee' is one that is 'adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys.'" *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (quoting S.Rep. No. 94–1011, p. 6 (1976)).

*C.M. ex rel. P.M. v. Syosset Cent. Sch. Dist.*, No. CV 11-1402 MKB GRB, 2013 WL 5741830, at *9 (E.D.N.Y. Aug. 9, 2013) *report and recommendation adopted sub nom. C.M. v. Syosset Cent. Sch. Dist.*, No. 11-CV-1402 MKB, 2013 WL 6157188 (E.D.N.Y. Nov. 22, 2013). Given the unusual factors in this case, I find that one-third of the settlement amount—$9,946.60—represents what a reasonable client would be willing to pay given the quality of the representation and the outcome of the litigation. *Arbor Hill*, 522 F.3d at 190 (instructing district courts to "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," such as time and labor required for the case, amount involved in the case and results

15

obtained, and experience, reputation and ability of attorneys). Therefore, the Court awards $9,946.60 in attorney's fees.

### 4. Costs

Judge Bianco properly set forth the standard for costs:

> As for costs, a court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Pennacchio v. Powers*, No. 05–CV–985 (RRM) (RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011) (quoting *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir.1998)). "The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Id.*; *see also First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10–CV–696 (KAM)(SMG), 2013 WL 950573, at *10 (E.D.N.Y. Mar. 12, 2013). In particular, under Local Civil Rule 54.1, "the party must include as part of the request 'an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred,' " and "[b]ills for the costs claimed must be attached as exhibits." *D.J. ex rel. Roberts v. City of New York*, No. 11–CV–5458 (JGK)(DF), 2012 WL 5431034, at *9 (S.D.N.Y. Oct. 16, 2012) (quoting Local Civ. R. 54.1(a)), *report & recommendation adopted*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012).

*Barbu*, 2015 WL 778325, at *6. Plaintiff requests $3,914.12 in costs. DE 112 at Ex. Z. Although Fund Defendants object to, *inter alia*, counsel's charging of faxes at $2.00 per page, the record shows the costs that plaintiff submitted are, overall, reasonable. Therefore, the Court awards plaintiff $3,914.12 in costs.

### 5. Allocation of Attorney's Fees and Costs

The settlement agreement executed by the parties provides that "Defendant Caruso shall be liable for 10% of the award of attorneys' fees and disbursements ("Caruso's Share"), and Defendant the Fund shall be liable for 90% of the award of attorneys' fees and disbursements ("Fund's Share")." DE 112 at Ex. X. Accordingly, the Court apportions the attorney's fees and costs with Fund Defendants to pay 90% of the total amount, and Caruso Defendants to pay 10%

16

of the total amount.

## CONCLUSION

For the reasons set forth herein, the Court awards $9,946.60 in attorney's fees, and $3,914.12 in costs, with 90% of the total amount to be paid by Fund Defendants, and 10% to be paid by Caruso Defendants. In light of the stipulation in Docket Entry 119, the case is hereby closed.

SO ORDERED.

Dated: Central Islip, New York
       April 23, 2015

                                              /s/ Gary R. Brown
                                              Gary R. Brown
                                              United States Magistrate Judge